**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONNIE LEE MACK, SR., | Case No.: 1:18-cv-01287-BAM |
| Plaintiff, | **ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| Defendant. | **FOURTEEN-DAY DEADLINE** |

## INTRODUCTION

Plaintiff Ronnie Lee Mack, Sr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend that the agency's determination to deny benefits be affirmed.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 2, 2015. AR 229-35, 236-44.[2] Plaintiff alleged that he became disabled on October 6, 2014, due to post-traumatic stress disorder ("PTSD"), sleep apnea and migraines. AR 268. Plaintiff's applications were denied initially and on reconsideration. AR 148-52, 159-63. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ John Trunick held a hearing on June 29, 2017, and issued an order denying benefits on January 22, 2019. AR 13-29, 38-95. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on June 29, 2017, in Fresno, California. Plaintiff appeared with his attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 40.

In response to questioning by the ALJ, Plaintiff testified that he completed high school and can read, write and understand English. He is right-handed, 5'11" and 300 pounds. He is considered obese. AR 46. He lives with his girlfriend and two daughters, ages 13 and 18. AR 66.

When asked about his past work at Home Depot, Plaintiff testified that he operated a forklift and worked in customer service for the lumber department. He spent about 40 percent of the day on the forklift and 60 percent helping customers. Plaintiff stopped working because of injury and discipline. AR 47-52. Plaintiff's past work at Home Depot was classified as material handler and sales attendant, building materials. AR 54.

At one point in the hearing, Plaintiff asked to stand. The ALJ noted that Plaintiff had a cane when he came into the hearing. Plaintiff explained that he needed it for his right knee. He has had

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

three surgeries on that knee, which was one of the reasons he was let go from Home Depot. AR 53-54. He also hurt his back on the job in 2014 while lifting a toilet with another associate. AR 61. He reported the injury to his back, but he did not pursue a worker's compensation claim for it. He did recover a worker's compensation claim for his knee. AR 62-63.

Plaintiff's counsel clarified that the conditions at issue included PTSD with major depressive disorder, sleep apnea, migraines, right knee degenerative joint disease with failed ACL reconstruction, left knee degenerative joint disease with derangement and tear, lumbar spine degenerative disc disease, and obesity. AR 55-57. When asked what prevented him from working, Plaintiff testified that his knees swell up and he is in constant pain due to his back injury. He also has numbness in the morning with his hands. He is in constant pain and takes medications. AR 64-66.

When asked about his activities, Plaintiff testified that he does not do any cooking, cleaning or shopping. He has a driver's license and is still able to drive. He watches TV and can watch half of a football game. He could not watch a movie, but he could probably watch a one-hour program. AR 66-69. On a typical day, he sleeps a lot. He will wake up at 1:00 or 2:00 in the afternoon, doze around 5:00 or 6:00, then get up at 5:00 or 6:00 to watch TV or interact with the kids. AR 72-73.

When asked about his medications, Plaintiff testified that he takes ibuprofen and Norco. He also takes medications for depression, including anti-anxiety medication. His medications work about 70% of the time. He cannot drive when he takes medications because they make him dizzy. AR 73-74.

In response to questions from his attorney, Plaintiff testified that he can carry gallons of milk, but not for long distances because his hands start locking up. If he tried to drive to Los Angeles, he would have to stop every 20 minutes because of his back and knee. He recently had shots in his left knee, and they want to go in and clean it. On his right knee, they want to either clean it or replace it. He does not have surgery scheduled, and they are waiting for his answer. He would like to try the shots again, even though he previously did not find relief with them. AR 75-77.

Plaintiff also testified that when he worked at Home Depot, he would have to leave work at least once a week because of pain in his right knee. It would lock up. When it would swell, he would elevate it and ice it. He has had a cane for three months, but he had been using crutches. He has to

3

use an assistive device all the time. He can stand independently, but not more than 5 minutes. AR 77-81.

With regard to his back problems, Plaintiff testified that he experiences muscle spasms daily. Shots in his back did not work. Physical therapy also did not help. AR 81.

Plaintiff also testified that he had surgery for carpal tunnel in 2013, but still has symptoms of numbing and arthritis. He also has constant cramping. AR 82.

With regard to his anxiety, Plaintiff reported that many things can trigger an episode. He has had issues at work with coworkers and customers. He was sent home a few times because of his reactions. Plaintiff believed his PTSD related to something in both his childhood and adulthood. AR 83-84.

Following Plaintiff's testimony, the ALJ elicited additional testimony from VE Judith Najarian. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a person with the same age, work experience and education as Plaintiff who was capable of medium work with the ability to lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk up to six hours per eight-hour day, sit up to six hours per eight-hour day, could occasionally climb ladders, ropes, and scaffolds, must avoid concentrated exposure to hazards such as operating machinery, unprotected heights, or walking on uneven surfaces, and was limited to simple one and two-step tasks. The VE testified that this person could not perform Plaintiff's past work, but there would be other jobs in the national economy that he could perform, such as counter supply worker, meat clerk, and food service worker (hospital). AR 88-89.

For the second hypothetical, the ALJ asked the VE to add a limitation that the person must avoid concentrated exposure to gases, fumes, dust, odors and pulmonary irritants. The VE testified that these same jobs would be available according to the Dictionary of Occupational Titles ("DOT"). AR 89-90.

For the third hypothetical, the ALJ asked the VE to add a limitation that the person would require two additional breaks of 10 to 15 minutes each for relief from pain or for refocusing. The VE testified that there would be no employment with such a limitation. AR 90.

For the fourth hypothetical, the ALJ asked the VE to consider a person who was capable of light work with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk up to six hours per eight-hour day, sit up to six hours per eight-hour day, occasionally climb ladders, ropes, and scaffolds, must avoid concentrated exposure to hazards such as operating machinery, unprotected heights, or walking on uneven surfaces, and work was limited to simple one and two-step tasks. The VE testified that this person could not perform Plaintiff's past work, but there would be other jobs in the national economy that he could perform, such as cafeteria attendant, sales attendant, and marker. AR 90-91.

For the fifth hypothetical, the ALJ asked the VE to add the limitation that the person would need to avoid concentrated exposure to gases, fumes, dust, odors, and pulmonary irritants. The VE testified that it would not affect the three identified jobs. AR 91.

For the sixth hypothetical, the ALJ asked the VE to add a limitation that the person would require two additional breaks of 10 to 15 minutes each as needed in addition to standard breaks. The VE testified that, based on her opinion, there would not be any jobs. AR 91.

For the seventh hypothetical, Plaintiff's attorney asked the VE to consider the limitations of hypothetical one except that the individual could lift 50 pounds occasionally, 25 pounds frequently, and could carry 20 pounds occasionally and 10 pounds frequently. This individual also could sit for 20 minutes, stand for 5 minutes and use a cane. The VE testified that this individual could not perform Plaintiff's past relevant work or any other work. AR 92-93.

For the eighth hypothetical, Plaintiff's attorney asked the VE to consider the limitations of hypothetical one except that this individual would have to elevate the right lower extremity for 25% of the workday. The VE testified that this individual could not perform Plaintiff's past relevant work or any other work. The VE's opinion would not change if the limitation was 20% of the workday. AR 93-94.

For the final hypothetical, Plaintiff's attorney asked the VE to consider the same limitations of hypothetical one except that this person would likely miss three days out of the typical month. The VE testified that this individual could not keep his past relevant work or any other work. AR 94.

///

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 13-29. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 6, 2014, his alleged onset date. AR 18. The ALJ identified degenerative joint disease of the bilateral knees with a history of right-sided repair, degenerative disc disease of the lumbar spine, obstructive sleep apnea, obesity, affective disorder and trauma-related disorder as severe impairments. AR 19-20. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 20-23. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for six hours out of an eight-hour workday, could occasionally climb ladders, ropes, and scaffolds, must avoid concentrated exposure to hazards such as operating machinery, unprotected heights, or walking on uneven surfaces, must avoid concentrated exposure to fumes, odors, dust, gases, areas of poor ventilation, or other pulmonary irritants, and is limited to simple, or two step tasks. AR 23-26. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work, but he could perform other jobs existing in significant numbers in the national economy, such as cafeteria attendant, sales attendant, and marker. AR 26-28. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 28-29.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff argues that the ALJ erred by (1) failing to obtain an assessment of Plaintiff's physical and mental limitations from a treating or examining source and relying on his own lay interpretation of the medical data, (2) failing to properly consider Plaintiff's subjective complaints of pain; and (3) improperly discounting the opinion of third-party witness, Briant Young. (Doc. No. 14 at 1.)

///

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

**A. The ALJ Did Not Err in His Evaluation of Plaintiff's RFC**

Plaintiff first contends that the ALJ pointed to no evidence from a medical professional to support the assessment of Plaintiff's RFC. In particular, Plaintiff argues that the RFC is legally deficient because no medical professional assessed the impact of Plaintiff's diagnoses and symptoms in light of the longitudinal evidence of record. (Doc. No. 14 at 13.) Plaintiff therefore asserts that the ALJ erred by failing to obtain an assessment of Plaintiff's physical and mental abilities from a treating or examining source.

According to the record, the only expert medical opinions regarding Plaintiff's physical RFC are those of the state agency physicians, Drs. E. Wong and W. Jackson. On September 1, 2015, following a review of the record, Dr. Wong opined that Plaintiff could perform medium work with postural and hazard limitations. AR 99. Specifically, Dr. Wong opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand or walk for about six hours in an 8-hour workday, could sit about six hours in an 8-hour workday, occasionally could climb ladders, ropes, and scaffolds and must avoid concentrated exposure to hazards, such as machinery and heights. AR 102-03. On October 23, 2015, following a review of records, Dr. Jackson affirmed Dr. Wong's opinion that Plaintiff could perform medium work with postural and hazard limitations. AR 126-27. Specifically, Dr. Jackson opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk for about 6 hours in an 8-hour workday, could sit about six hours in an 8-hour workday, occasionally could climb ladders, ropes and scaffolds, and must avoid concentrated exposure to hazards, such as machinery and heights. AR 125-27.

Likewise, the only expert medical opinions regarding Plaintiff's mental RFC are those of the state agency physicians, Drs. G. Ikawa and Patricia Heldman. In September 2015, Dr. Ikawa determined that Plaintiff's anxiety and affective disorders were not severe, and Plaintiff had only mild difficulties in maintaining concentration, persistence or pace. AR 100-01. However, on reconsideration of additional records, Dr. Heldman opined on October 22, 2015, that Plaintiff's anxiety and affective disorders were severe, but that Plaintiff was capable of sustaining simple tasks. Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. AR 122-23.

The ALJ considered the opinions of Drs. Wong, Jackson, Ikawa and Heldman and assigned them "great weight." AR 25. In so doing, the ALJ acknowledged that these opinions were rendered by non-treating, non-examining medical sources, but nevertheless found that their opinions were consistent with the medical records through the time period they considered. *Id.*

Plaintiff does not argue that the opinions of the state agency physicians were inconsistent with the medical records through the time periods they assessed. Rather, Plaintiff argues that the ALJ had a duty to develop the record and obtain opinion evidence from a physician who reviewed the entirety of the medical record, including those records post-dating the state agency physicians' opinions. Plaintiff asserts that it was error for the ALJ to assess Plaintiff's RFC without the benefit of such opinion evidence. Plaintiff cites to *Molina v. Berryhill*, No. 2:17-cv-01991 CKD, 2018 WL 6421287 (Dec. 6, 2018), to support his assertion that the ALJ committed reversible error by failing to obtain additional opinion evidence. *Molina*, however, is not binding Ninth Circuit precedent and is otherwise distinguishable. Unlike here, *Molina* involved evidence of *new* physical injuries after the claimant was physically assaulted, not merely ongoing or existing medical impairments for which the claimant was receiving treatment. *Id.* at *4.

In this case, the Court is not persuaded that the ALJ was required to develop the record further by obtaining additional medical opinion evidence in order to determine Plaintiff's RFC. An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity"). As the Ninth Circuit has made clear, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

In this case, the ALJ summarized record evidence spanning 2012 through 2017 and found that Plaintiff had not established he was disabled. AR 24-26. Plaintiff contends that the ALJ's recitation

of the medical history and treatment records is inadequate to support an RFC determination in the absence of medical opinions regarding the impact of Plaintiff's diagnoses and impairments on his ability to work. Because it is the Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also* Alvarez v. Astrue, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at \*10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled…."); 20 C.F.R. § 416.912(a) (same). There is no indication that Plaintiff's clinical, diagnostic and treatment records were incomplete, inadequate or ambiguous. The ALJ, with support in the record, found the evidence adequate to make a determination regarding Plaintiff's disability. *Bayliss*, 427 F.3d at 1217.

As to Plaintiff's physical functioning, Plaintiff suggests that the ALJ's RFC did not account for imaging and clinical findings regarding Plaintiff's knees that led treating sources to proceed with injections and surgical recommendations. (Doc. No. 14 at 14.) However, the ALJ considered this evidence including x-rays of Plaintiff's knees in October 2016 showing only "mild" degenerative changes and "mild" arthritis on the right and "minimal" degenerative joint disease and "minimal" arthritis on the left (AR 1241-42), examination findings showing reduced range of motion in the right knee (AR 1246), and a notation that his prior right knee repair had failed. AR 24, 1268. The ALJ also considered injections of Plaintiff's right knee, and that Plaintiff was relatively young and overweight for knee replacement. AR 24, 1399. As to Plaintiff's left knee, the ALJ considered a November 2016 MRI of the left knee that showed a "[p]ossible subtle tear of the posterior horn of the meniscus," and that Plaintiff was not a candidate for knee replacement. AR 1285, 1300. The ALJ's

decision to limit Plaintiff to no more than a light level of exertional demand and restriction of his climbing ability is supported by substantial evidence in these records showing only mild and minimal changes on x-ray, reduced range of motion in the right knee, a meniscus tear that did not require surgery, and that Plaintiff was not a candidate for knee replacement. AR 24. The ALJ reasoned that claimant's knees, along with his back condition and obesity, "especially as documented in more recent record" supported such a limitation. AR 25.

As to Plaintiff's mental functioning, Plaintiff suggests that the ALJ's RFC did not account for treatment records documenting his worsening depression and paranoia, PTSD symptoms, difficulties with social functioning, and psychomotor retardation. (Doc. No. 14 at 13-14.) However, the ALJ considered this evidence of record, summarizing the mental health treatment records post-dating the opinions of the state agency physicians as follows:

> In January of 2016, the claimant reported drinking until he blacked out and alleged nighttime anxiety and flashbacks of alleged childhood abuse. Ex. 7F at 1. However, the claimant still had normal thought process, normal concentration and attention, fully functional memory, and fair insight and judgment. Ex. 7F at 2. The claimant did have episodes of psychomotor retardation, but at the same time was logical, pleasant and cooperative, and with normal attention and concentration. Ex. 7F at 2, 13, 20. The claimant was referred to group therapy, but was seen for medication management only every eight weeks. Ex. 7F at 23.

AR 25. As with evidence of Plaintiff's physical impairments, there is no indication Plaintiff's mental health records were incomplete or ambiguous. Although Plaintiff complained of "significantly worsened" symptoms of depression and PTSD, mental status evaluations in 2016 and 2017 demonstrated that Plaintiff's thought processes/associations were logical, his thought content was goal directed, his attention and concentration were within normal limits, his memory was intact, his insight and judgment were fair, and Plaintiff's primary area of social difficulty appeared to be tension between Plaintiff and his partner. AR 22, 25, 136, 903, 910, 976, 986-87, 993, 994-95, 997. The treatment records reviewed and considered by the state agency physicians contained similar symptoms and complaints regarding Plaintiff's mental health. For instance, Plaintiff sought treatment for depression, complained of paranoia and isolating behaviors, and had psychomotor retardation. Yet, consistent with reports in 2016 and 2017, Plaintiff's mental status examinations revealed logical

thought processes, normal thought content, fair attention, attention and concentration within normal limits, intact memory and fair insight and judgment. AR 136, 904-05, 910-11, 916-17. The ALJ's decision to limit Plaintiff to simple tasks, consistent with the opinion of Dr. Heldman, is supported by substantial evidence in the record.

For these reasons, the Court does not find error.

**B.     The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ improperly rejected his subjective symptom testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 25. In so doing, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's statements regarding the limiting effects of his symptoms were not consistent with the medical evidence. AR 25. Although lack of medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this instance, the ALJ provided a detailed summary of the medical record in developing Plaintiff's RFC and in evaluating his allegations of disabling impairments. With respect to Plaintiff's lumbar spine, the diagnostic records did not support the degree of alleged impairment. AR 24. As identified by the ALJ, x-rays in 2016 showed a normal spine and an MRI in November 2016 showed only "mild lower lumbar facet arthropathy with very mild disc degeneration at L5-S1," "no significant central canal stenosis at any level," and "stable mild bilateral l5-S1 neural foraminal narrowing." AR 24, 1230, 1280. With respect to his knee complaints,

Plaintiff alleged that he required a cane or crutches all the time, but the ALJ noted that there was no indication that these had been prescribed. AR 20, 24, 1370-71. Plaintiff also alleged carpal tunnel syndrome with attendant symptoms, but the record contained no such diagnosis. AR 20. As to his mental health issues, Plaintiff reported decreased concentration, but the ALJ noted that Plaintiff's treatment records generally showed fair or normal concentration. AR 25, 916-17, 976, 987, 995. Plaintiff also alleged an inability to work with others, but, as noted above, the ALJ considered treatment records reflecting that Plaintiff's primary area of social difficulty was tension with his partner. AR 22, 136, 903, 910, 993.

Second, the ALJ discounted Plaintiff's allegations concerning the limiting effects of his symptoms based on the medical opinion evidence. AR 25-26. Contrary to Plaintiff's allegations that he was disabled, the state agency physicians determined that Plaintiff could perform a range of medium work with postural and hazard limitations, and a limitation to simple tasks. AR 99, 102-03, 125-27, 122-23. The ALJ properly relied upon these opinions in discounting Plaintiff's subjective complaints. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, including the opinions of two physicians that a claimant could work, supported the ALJ's credibility determination); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting plaintiff's excess pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

Plaintiff argues that the ALJ disregarded the regulations, which direct consideration of a claimant's daily activities in assessing degrees of pain. (Doc. No. 14 at 16.) Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, factors relevant to a claimant's symptoms which the ALJ will consider include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other

13

symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Plaintiff's contention that the ALJ did not consider Plaintiff's daily activities is not supported. According to the record, the ALJ expressly stated in his decision that in determining Plaintiff's RFC, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p." AR 23; *see also* AR 20. As to Plaintiff's "daily activities," the ALJ evaluated such evidence, noting, among other things, that Plaintiff testified to "difficulty performing housework but did state that he was able to drive and could sit for an hour." AR 24. Plaintiff does not identify what specific evidence the ALJ failed to consider in evaluating Plaintiff's daily activities.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

### C. The ALJ Did Not Err in Evaluating the Lay Witness Testimony

As a final matter, Plaintiff argues that the ALJ erred by improperly discounting the opinion testimony from Briant Young, a third-party witness. Mr. Young, a friend of Plaintiff's, completed a Third-Party Function Report on June 15, 2015. He reported that Plaintiff is not motivated, is always exhausted, is never happy and does not want to interact with anyone. AR 278. Plaintiff lies in bed all day, but he takes the kids to and from school and he cooks dinner for them. Plaintiff has no problem with personal care, such as dressing or bathing. AR 279. He needs reminders about appointments and assistance to prepare meals. He does not do yard work or laundry, but shops for food. AR 280-81. He watches TV every day. Mr. Young also reported that Plaintiff's condition affects his ability to squat, walk, kneel, along with his memory, completion of tasks, understanding, following instructions and getting along with others. AR 282-83.

An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted). An ALJ is not required to discuss every witness' testimony on an individualized, witness-by-witness basis. *Id.* "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Here, the ALJ considered the third-party report prepared by Plaintiff's friend, which corroborated many of Plaintiff's allegations. AR 26. Because the third-party statement of Plaintiff's friend was of the same general nature as Plaintiff's subjective complaints, the ALJ's valid reasons for discounting Plaintiff's statements apply equally his friend's similar statements, including that these statements were not supported by clinical or diagnostic medical evidence or consistent with the opinions of the state agency consultants. *Molina*, 674 F.3d at 1122 ("given that the lay witness testimony described the same limitations as Molina's own testimony, . . . the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Accordingly, the Court finds that the ALJ did not commit reversible error in his evaluation of the lay witness testimony.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action. Furthermore, it is HEREBY RECOMMENDED that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that judgment be entered in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Ronnie Lee Mack, Sr.

///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 12, 2020**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE