UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE LEE MACK, SR.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:18-cv-01287-DAD-BAM<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND REMANDING THIS MATTER FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(Doc. No. 19) |

　　　　Plaintiff Ronnie Lee Mack, Sr. filed this appeal of defendant Commissioner of Social Security's final decision denying plaintiff's applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. (Doc. No. 1.) The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

　　　　On March 13, 2020, the assigned magistrate judge issued the pending findings and recommendations, finding that substantial evidence supported the Administrative Law Judge's ("ALJ") January 22, 2019 decision denying plaintiff benefits under the Social Security Act, and recommending that plaintiff's appeal of the Commissioner's final decision be denied. (Doc. No.

/////

1

19.)  On March 26, 2020, plaintiff timely filed objections to the findings and recommendations. (Doc. No. 21.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a *de novo* review of this case.  Having carefully reviewed the entire file, including plaintiff's objections, the court declines to adopt the findings and recommendations.  For the reasons set forth below, and pursuant to sentence four of 42 U.S.C. § 405(g), the court will reverse the Commissioner's final decision and remand this matter for further administrative proceedings in accordance with this order.

The relevant facts and legal standards are recited in the findings and recommendations and adopted by reference here.  (*See* Doc. No. 19 at 1–7.)  In his objections to the findings and recommendations, plaintiff raises the same primary argument that he raised in his opening brief before the magistrate judge.  That is, the ALJ failed to develop the record and instead substituted his own judgment for that of a medical expert's when determining plaintiff's physical residual functional capacity ("RFC").  (Doc. No. 21 at 2–5; *see also* Doc. No. 14 at 12–16.)  Specifically, plaintiff argues that while two state agency physicians reviewed his medical records in 2015 and opined that he could perform "medium exertional work," neither of those physicians nor any other medical professional reviewed his subsequent medical records from 2016 and 2017, much less formed an opinion about the effect that the impairments identified in those later medical records had on his ability to work on a function-by-function basis.  (Doc. No. 21 at 4.)  According to plaintiff, the state agency physicians' 2015 medical opinions "were therefore rendered without the benefit of critical evidence, including x-rays, MRI findings, orthopedic treatment, injections, and surgical recommendations."  (*Id.*)  Plaintiff contends that under these circumstances the ALJ was obligated to further develop the record and obtain medical opinion evidence from a physician who had reviewed all of the medical record, including the records post-dating the 2015 state agency physician opinions.  (*Id.*); *see also Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when the record is inadequate to allow for proper evaluation of the evidence.").  Plaintiff also argues that "without the guidance of a medical expert to translate the clinical findings and imaging into functional

2

terms, the conclusions of the ALJ . . . are mere speculation, and speculation is not substantial evidence." (Doc. No. 21 at 5); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("Substantial evidence is defined as 'more than a mere scintilla but less than a preponderance.'").

The pending findings and recommendations concluded that the ALJ was not obligated to develop the record any further because he summarized and considered the medical records from 2016 and 2017 in rendering his decision. (Doc. No. 19 at 9–11.) The undersigned does not find this to be sufficient. First, the new medical records reviewed by the ALJ provided no indication of the impact the diagnosed impairments had on plaintiff's ability to work on a function-by-function basis. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, . . . the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("With few exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a medical record."). Second, while "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity" (Doc. No. 19 at 9) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)), it does not follow that the ALJ can substitute his own interpretations of medical records and data for medical opinions. Under somewhat similar circumstances where new medical evidence was not considered by the physician who rendered the opinion regarding the claimant's residual functional capacity, the Ninth Circuit has held:

> The ALJ was aware that Rondan had undergone two MRIs, but the results of those tests had not been taken into account by the doctor who rendered the opinion on RFC. Instead of requesting a supplemental medical opinion that included consideration of the MRIs, the ALJ drew his own conclusions about the MRIs. The lack of a medical opinion that included consideration of the MRIs, and the fact that the RFC determination was made without consideration of Rondan's medical records, triggered the ALJ's duty to further develop the record. *Tonapetyan* [*v. Halter*], 242 F.3d [1144], 1150 [(9th Cir. 2002)]. The ALJ should have ordered another RFC examination by a doctor who not only would examine Rondan, but also consider his medical records and the MRIs.

/////

3

*Rondan v. Halter*, 8 Fed. Appx. 724, 725 (9th Cir. 2001).[1]

The undersigned has reviewed the record in this case and concludes that here the ALJ substituted his own judgment for that of a medical professional's in determining plaintiff's physical RFC.  For example, the ALJ considered "[m]agnetic resonance imaging [from] November of 2016," which "indicated the claimant had mild facet arthropathy, 'very mild' disc degeneration at the level of the fifth lumbar and first sacral vertebrae, no significant stenosis at any level, and mild, stable, narrowing of the neural foramina at the level of the fifth lumbar and first sacral vertebrae." (Doc. No. 8-3 at 25.)  Those images also "showed a torn meniscus" in plaintiff's left knee. (*Id.*)  The ALJ considered a "[r]adiological study of the claimant's knees[] [from] October of 2016, [which] showed mild degenerative changes on the right, . . . and 'minimal' degenerative joint disease and arthritis on the left." (*Id.*)  These medical records also indicated that "claimant had a reduced range of motion in the right knee on examination," and that "claimant's right knee repair was described as 'failed' in October of 2016." (*Id.*)  The ALJ noted that "[r]ecords from 2017 show that doctors continued to inject the claimant's right knee but also that they reported the claimant's weight was contributory to his knee problems[.]" (*Id.*)

Despite the fact that a physician was not asked to review these medical records and opine on what they revealed about plaintiff's ability to work on a function-by-function basis and despite the fact that these records are clearly medical in nature, the ALJ proceeded to determine plaintiff's physical RFC.  For example, with respect to the October 2016 radiological study of plaintiff's knees and the November 2016 MRI imaging of plaintiff's left knee, the ALJ concluded that "[t]his evidence supports limiting the claimant to no more than a light level of exertional demand." (*Id.*)  Similarly, with respect to the November 2016 MRI images of plaintiff's lumbar spine, "to the extent that this evidence supports a severe impairment, [the ALJ concluded] it is severe only in combination with the claimant's obesity and knees and supports limiting the claimant to a light level of exertional demand." (*Id.*)  Notably missing from the ALJ's analysis is reference to any medical findings indicating that, given the impairments identified in the 2016

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

and 2017 medical records, plaintiff could indeed perform work with a light level of exertional demand.

That the ALJ's decision to substitute his own judgment for competent medical opinion was improper is further evidenced by the ALJ's own reasoning:  The ALJ both relied upon and discounted the opinions of the state agency physicians who opined in 2015 that plaintiff could perform work at medium levels of exertional demand.  Specifically, on one hand, the ALJ stated that he "gave great weight to th[ose] opinions," but on the other hand implicitly rejected those opinions, instead making a different finding that "the claimant's knees, back condition and his obesity, *especially as documented in more recent records*[,] support limiting him to no more than light levels of exertional demand." (Doc. No. 8-3 at 26–27) (emphasis added).[2]  The court concludes that instead of reassessing the weight he gave to the the 2015 opinions of the state agency physicians in light of the more recent medical records, the ALJ should have fully developed the record by obtaining a medical opinion that considered those records before determining plaintiff's physical RFC.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1151 (9th Cir. 2002) (reversing and remanding for further proceedings where ALJ's RFC determination was based on less than a fully developed medical record); *Nguyen*, 172 F.3d at 35 (reversing and remanding for further proceedings where the ALJ made an RFC determination was based on the ALJ's own interpretation of raw medical data unsupported by medical opinion evidence).  The court therefore concludes that the ALJ's physical RFC determination in this case is not supported by substantial evidence.[3]

/////

---

[2]  Thus, this is not a case where the new medical evidence was found by the ALJ to be consistent with the physicians earlier assessments so that the ALJ could not be said to have substituted her opinion for that of medical testimony.  *See Jordan v. Colvin*, 603 Fed. Appx. 611, 612 (9th Cir. 2015).

[3]  It may be that a physician will review the 2016 and 2017 medical records and agree that their impact is minimal and still renders plaintiff capable of performing light work as the ALJ determined.  However, because the ALJ chose not to develop the record by obtaining a medical opinion regarding the impact of those more recent medical records, this court is simply unable to determine how the ALJ arrived at his RFC determination and cannot affirm that determination.

With error established, this court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." *Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994). However, "[w]here . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Here, as explained above, the record is simply underdeveloped and it is not clear at all that plaintiff is entitled to the award of benefits.

Accordingly, the court will remand the matter back for further development of the record.[4] On remand, the ALJ shall obtain a consultative physical examination by a physician who has full access to plaintiff's past medical records. The consultative examination shall focus on the functional limitations caused by plaintiff's physical impairments during the relevant time period. Of course, the ALJ is also free to develop the record in other ways, as needed.

For the reasons set forth above:

1. The March 13, 2020 findings and recommendations (Doc. No. 19) are declined;
2. Plaintiff's appeal from the administrative decision of the Commissioner (Doc. No. 1) is granted; and

/////
/////
/////
/////

---

[4] In his opening brief before the magistrate judge as well as in his objections to the pending findings and recommendations, plaintiff asserts additional arguments as to why he believes the ALJ erred, including that the ALJ failed to properly evaluate his subjective complaints of pain and failed to set forth convincing reasons for discounting a third-party witness' statement. (*See* Doc. Nos. 14 at 14–19; Doc. No. 21 at 5–8.) The court need not address these additional arguments as it has already concluded that the ALJ's determination of plaintiff's physical RFC is not supported by substantial evidence.

3. Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed, and this matter is remanded for further administrative action consistent with this order.

IT IS SO ORDERED.

Dated:   **May 26, 2020**　　　　　　　　　　/s/ Dale A. Drozd
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE